# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————— :
                                         :
UNITED STATES OF AMERICA                 :
                                         :          CRIMINAL NO. 11-649
        v.                               :          CIVIL NO. 15-6286
                                         :
ROBERT ODOM                              :
                                         :
———————————————————————————— :

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                    **June 22, 2016**

Presently before the Court is Defendant, Robert Odom's ("Odom") pro se "Motion Under § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody," and the United States of America's ("Government") Response in Opposition. For the reasons set forth below, Odom's Motion is denied.

## I.      BACKGROUND

On July 25, 2012, Odom was convicted by a jury after a trial held before this Court of one count of unlawful possession of a handgun by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 70.) Odom had been released on bail prior to trial and was permitted to remain on bail pending sentencing. (Gov't's Mot. to Dismiss Petition at 5.) Odom failed to appear for his sentencing on October 26, 2012, and we issued a bench warrant for his arrest. (Doc. No. 76.) Odom was eventually arrested in Georgia on December 11, 2013, and on January 28, 2014, we sentenced him to 60 months imprisonment and other penalties. (Doc. No. 96.) Odom appealed his conviction and sentence. The United States Court of Appeals for the Third Circuit ("Third Circuit") affirmed. See United States v. Odom, 627 F. App'x 151 (3d Cir. 2015).

Odom filed a pro se § 2255 Motion on February 1, 2016, and argues that he had ineffective counsel throughout his case for the following reasons: (1) his attorney never showed him the Jencks Act material; (2) his attorney never discussed his case with him in terms of a possible defense; (3) his attorney never did a background check of "the Philadelphia Police Officer" for past incidences of misconduct, which would have shown that the officer was a defendant in a federal court action for "planting" a gun; (4) his attorney failed to perform a fingerprint check on the gun and failed to see if the fingerprint on the gun matched Officer Michael Chichearo ("Officer Chichearo") or Officer Brian Clerkin ("Officer Clerkin"); (5) his attorney failed to investigate two Government eye witnesses or call any exculpatory witnesses; (6) his attorney failed to subpoena the video from his limousine that would have shown the gun was planted; (7) his attorney failed to find out who the registered owner of the gun was; (8) his attorney failed to file a motion to suppress "on the grounds the gun was planted;" and (9) his attorney failed to verbally communicate with him "during the entire duration (1 ½ years)" of his case.[1]  (§2255 Mot. at 5-6.)  The Government filed its Response to Odom's Motion on May 2, 2016.  (Doc. No. 117.)

The Government's case at trial was based on events that took place on April 9, 2011. (Gov't's Mot. to Dismiss Petition at 1.)  On this date, Philadelphia Police Officers William Hoppe ("Officer Hoppe") and Leonard Ginchereau ("Officer Ginchereau") were patrolling the area of Bridge and James Streets in Philadelphia.  (Id.)  A woman, later identified as Shelmina Boone ("Boone"), was flagging the officers down in front of R&R Auto Repair at the

---

[1] "[W]e remain mindful of our obligation to construe a pro se litigant's pleadings liberally."  Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 n.1 (3d Cir. 2009).

intersection.  (Id.)  She said she had been threatened by a black man with a gun who fled in a black limousine.  (Id.)

Officer Hoppe and Ginchereau saw a black limousine several blocks away and pulled it over.  (Id.)  The driver and registered owner of the vehicle was Odom.  (Id. at 1-2.)  Officers Clerkin and Chichearo were also patrolling the area and went to R&R Auto Repair in response to a radio call.  (Id. at 2.)  The officers met Boone and Eric Marshall ("Marshall").  (Id.)  Boone reported that she had a dispute with Odom regarding her vehicle, and that Odom pulled a handgun and pointed it at her.  (Id.)  In Boone's subsequent statement to police, she explained that she took her vehicle to Odom for repairs, and after several weeks the repairs were still not complete, but Odom still demanded payment for storing the car.  (Id.)  When she went to retrieve the vehicle and dispute payment, Odom attempted to lock her in his lot and threatened her with a handgun.  (Id.)  Boone called 911 and Odom fled.  (Id.)

Officers Clerkin and Chichearo then took Boone to where Officers Hoppe and Ginchereau had Odom at the trunk of his limousine.  (Id.)  Boone identified Odom as the one who threatened her with the gun at R&R Auto Repair.  (Id.)  When the officers arrived with Boone, the limousine driver's side door was open.  (Id.)  Officer Clerkin looked inside the open door, and clearly saw a handgun protruding from the torn upholstery on the driver's side floor next to the radio compartment.  (Id.)  The gun was within Odom's reach and view from the driver's seat of the vehicle.  (Id.)  After Officer Clerkin saw the gun, the officers placed Odom under arrest.  (Id.)  Boone identified the gun found in Odom's car as the gun with which he had threatened her at R&R Auto Repair a few minutes earlier.  (Id.)

The officers determined that Odom was the registered owner of the limousine, operated a limousine business, and was the owner of R&R Auto Repair.  (Id. at 3.)  The Philadelphia Parking Authority took possession of the vehicle at this time.  (Id.)  The gun located in Odom's vehicle was loaded with six rounds of ammunition and was registered to an owner in Texas; however, it was never reported stolen.  (Id.)  The Government conducted a fingerprint analysis on the gun, but no identifiable fingerprints were recovered.  (Id.)

Odom was charged locally, but his prosecution was adopted for federal prosecution.  (Id.) Boon testified to her altercation with Odom in front of a grand jury, and on November 1, 2011, the grand jury returned a one-count indictment against Odom, charging him with possession of a firearm by a convicted felon.  (Id.)  Odom was initially represented by Assistant Federal Defender Nina C. Spizer.  (Doc. No. 9.)  She was replaced by fellow Assistant Federal Defender, Rossman D. Thompson ("Thompson").  (Doc. No. 12.)  Thompson filed a suppression motion on behalf of Odom.  (Doc. No. 17.)  On March 16, 2012, Thompson withdrew as counsel due to a conflict of interest.  (Doc. No. 19.)  Three days later, the Court appointed Michael J. Engle ("Engle") to replace Thompson and granted a continuance to allow Engle time to prepare his case.  (Doc. No. 22.)  Within weeks, the attorney-client relationship between Engle and Odom became unworkable after a meeting while Odom was in prison, and Engle moved to withdraw as counsel.  (Doc. No. 23.)  On April 2, 2012, the Court granted Engle's motion and appointed Kenneth C. Edelin, Jr. ("Edelin") as defense counsel.  (Doc. Nos. 24-25.)  Edelin represented Odom at the suppression hearing, through trial, and on appeal.  (Gov't's Mot. to Dismiss Petition at 3.)

On April 25, 2012, Edelin represented Odom at the evidentiary hearing on his suppression motion.  (Id. at 3.)  At this hearing, Officers Ginchereau and Clerkin testified for the Government, and Odom testified in his defense.  (Id.)  We denied this motion, as well as a subsequent motion filed to dismiss the indictment on speedy trial grounds.  (Id. at 3-4.)

Trial was originally scheduled for May 2012. (Id. at 4)  Trial was postponed for a month in order to give the parties additional time to locate a purportedly exculpatory defense witness, Will Carboni ("Carboni").  (Doc. No. 39.)  Using contact information provided by Odom, and the Government's own investigative resources, the Government diligently tried to locate this witness.  (Gov't's Mot. to Dismiss Petition at 4.)  Despite extensive efforts, the Government was unable to locate Carboni and serve him with a trial subpoena.  (Id.)  Boone and Marshall were also unwilling trial witnesses.  (Id.)  The Government was unable to locate Marshall to serve him with a trial subpoena.  (Id.)  The Government was able to serve Boone, but she refused to appear in Court of her own volition.  (Id.)  We issued a show cause order, and ultimately an issued arrest warrant to compel Boone to appear in Court before and at trial.  (Doc. Nos. 51, 56, 65.)

At trial, the Government introduced testimony from Officer Hoppe and Officer Clerkin, among others.  (Tr. 7/23/12, pp. 23-61.)  When the Government rested its case in chief, Odom's attorney made an oral motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, but we denied the motion.  (Tr. 7/24/12, pp. 16-18.)  Odom took the stand in his defense, and denied that he possessed the gun; rather, he accused Boone and Marshall of threatening him with a gun instead.  (Id. at 19-46.)

In rebuttal, the Government introduced additional evidence including the testimony of Boone who asserted complete memory loss regarding the events of April 9, 2011, such as her

visit to R&R Auto Repair, her statement to police that day, and her subsequent grand jury testimony. (Gov't's Mot. to Dismiss Petition at 4.) Odom stipulated to the authenticity of the transcript of Boone's grand jury testimony, which incorporated her prior statement to police. (Tr. 7/24/12, p. 86.) We admitted the transcript of Boone's grand jury testimony. (Id. at 90.) The Government read Boone's grand jury testimony and statement to police to the jury as substantive evidence. (Id. at 90-96.) After the Government's rebuttal, Odom took the stand a second time. (Id. at 97-106.) After closing arguments, the jury convicted Odom on July 25, 2012. (Gov't's Mot. to Dismiss Petition at 5.)

Counsel for Odom filed an appeal in the Third Circuit, arguing that certain evidence should not have been admitted against him, the remaining evidence presented against him at trial was insufficient to support his conviction, and that he should either be afforded a judgment of acquittal or a new trial. (Id.) The Third Circuit held that Boone's grand jury testimony and statements to police were properly admitted at trial. See United States v. Odom, 627 F. App'x 151, 153-54 (3d Cir. 2015). The Third Circuit also held there was sufficient evidence presented at trial to show Odom constructively possessed the firearm at issue.[2] Id. at 154. The Court explained their decision:

> In the case at bar, there is sufficient evidence to support a finding
> by the jury that Odom had constructive possession of the firearm.
> Despite Boone's failed recall and Odom's testimony that Boone
> had a gun, Boone's previous grand jury testimony and statements
> to police support a finding that Odom possessed the gun. This is

---

[2] The Government was required to prove (1) that Odom had previously been convicted of a felony; (2) that Odom knowingly possessed a firearm; and (3) that the firearm had traveled in interstate commerce. 18 U.S.C. § 922(g)(1); United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000). Odom only challenged the second requirement. Odom, 627 F. App'x at 154 n.10. The Court held that "in order to prove constructive possession [the second requirement], the Government must have proven beyond a reasonable doubt that (1) Odom knew of the gun's existence, (2) Odom had the power to exercise dominion and control over the gun, and (3) Odom intended to exercise dominion and control over the gun." Id. at 154.

further bolstered by Boone's identification of Odom and of the gun on location the day of the incident and Boone's report of the incident occurring at R&R [Auto Repair].

The evidence above is supported by further evidence that Odom knowingly possessed the firearm. When Odom was stopped, he was driving a limousine registered in his name and no one else was in the vehicle; the butt of the gun was visible and placed on the driver's side of the vehicle within Odom's reach; and Odom was stopped within a few blocks of his business and within a few minutes of the underlying incident. Although Odom's proximity to the gun and ownership of the vehicle is not by itself enough to prove constructive possession, this Court may consider those factors in the context of the surrounding circumstances.

Id. at 154-55 (internal citations omitted). The Court also held that there was no issue with a lack

of identifiable fingerprints on the gun because:

Odom exerted control over the firearm as he was recently seen wielding it; Odom owned the vehicle in which the gun was found and R&R [Auto Repair], where Boone stated Odom used the gun; and, finally, although the fingerprint on the gun was unidentifiable, no other fingerprints were on the gun signifying use by another person.

Id. at 155.

## II.   **STANDARD OF REVIEW**

Odom is entitled to relief only if his custody or sentence violates federal law or the

Constitution. § 2255 provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2008).

A district court has discretion in determining whether to hold an evidentiary hearing on a habeas petition under § 2255.  See Gov't of the V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  In exercising this discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  See Gov't of the V.I. v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994).  Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'"  United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).  A § 2255 motion "can be dismissed without a hearing [only] if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005); see also Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (holding that "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record").

In Strickland v. Washington, the Supreme Court of the United States set forth a two-prong test for evaluating a claim of ineffective assistance of counsel.  466 U.S. 668 (1984).  A finding against the petitioner under either prong is sufficient to find for the government.  United States v. Ciancaglini, 945 F. Supp. 813, 816 (E.D. Pa. 1996).

First, a petitioner must show that counsel's performance was deficient, meaning that counsel made errors so serious as to deprive petitioner of the "counsel" guaranteed by the Sixth

Amendment.  Strickland, 466 U.S. at 687.  This evaluation must be based upon the facts of the case at the time of counsel's conduct.  Id. at 690.  "[T]he right to effective assistance of counsel does not guarantee that an attorney will never err."  Diggs v. Owens, 833 F.2d 439, 446 (3d Cir. 1987).  Therefore, to satisfy this prong, petitioner must show that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. Strickland, 466 U.S. at 688.  However, "[a]n attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial."  Diggs, 833 F.2d at 444-45.  Consequently, great deference is given in evaluating counsel's performance, and there is a strong presumption that counsel's challenged actions constitute sound trial strategy.  Strickland, 466 U.S. at 689.

Second, even if the court finds counsel's conduct to have been deficient, petitioner must nevertheless show that his defense was prejudiced by the deficient performance in order to justify setting aside the verdict.  United States v. Griffin, No. 91-612, 1993 WL 34927, at *5 (E.D. Pa. Feb. 9, 1993).  To establish the requisite prejudice under this second prong, petitioner must show that counsel's errors were so serious as to deprive him of a fair trial, i.e., one having a reliable result.  Strickland, 466 U.S. at 694.  In order to do so, petitioner must establish a reasonable probability that but for counsel's errors, the result of the trial would have been different.  Id.  A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.  Id.  This second prong must be evaluated by a totality of the circumstances existing at the time of the trial because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Griffin, 1993 WL 34927, at *5 (quoting Strickland, 466 U.S. at 696).

III.   **DISCUSSION**

Odom contends that his § 2255 Motion should be granted because his attorney provided constitutionally deficient assistance of counsel for several reasons as discussed in Section I above.  See supra p. 2.  Despite the statutory presumption in favor of holding evidentiary hearings in connection with § 2255 motions[3], Odom's claim will be denied without a hearing. See McCoy, 410 F.3d at 134 (explaining that no hearing is required if the record clearly resolves the merits of the § 2255 motion).  As noted above, we construe a prisoner's pro se pleading liberally; however, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation."  United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).  In ruling on a § 2255 petition, we may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced."  Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006); see also Strickland, 466 U.S. at 697 ("[I]n particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.").

In all of his claims, Odom has failed to establish, as required in Strickland, "that the deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive [Odom] of a fair trial" with a reliable result.  466 U.S. at 687.  Specifically, Odom failed to meet his burden by neglecting to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  We will address each claim in detail below.

---

[3] See 28 U.S.C. § 2255(b) ("[U]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing.").

**A.  Counsel was Ineffective for Not Conducting a Background Check on Officer Chichearo**

Odom contends that his attorney was ineffective because he never did a background check of the Philadelphia Police Officer Chichearo for past incidences of misconduct, which would have shown that the officer was a defendant in a federal court action for "planting" a gun. (§2255 Mot. at 5.)  As a preliminary matter, we agree with the Government's position that Odom completely misinterprets the case he cites in support of his argument.  See Gaddy v. City of Phila., No. 14-3435, 2015 WL 328235 (E.D. Pa. June 4, 2015).  Odom claims that Officer Chichearo was a defendant in the lawsuit for planting a gun.  (§2255 Mot. at 5.)  That is simply not the case.  The decision in Gaddy was related to the statute of limitations for a claim filed under 42 U.S.C. § 1983.  2015 WL 328235, at *1.  The issue was whether the doctrine of fraudulent concealment tolled the statute of limitations.  Id.  The plaintiff brought numerous claims against Officer Chichearo and other officers including use of excessive force for an arrest that occurred in September of 2011 that left him unconscious.  Id.  The plaintiff brought the claim after the statute of limitations period ended since he only found out the true cause of his injuries when he received a letter from a witness in early 2013.  Id. at 2.  His complaint was not filed until June 17, 2014.  Id.  The Court was not dealing with an issue of any "planting" by an officer; rather, the case dealt with whether Officer Chichearo testified falsely at the plaintiff's hearing which improperly delayed him from discovering the true cause of his injuries.  Id. at 3. Since the Court was dealing with an amended complaint, they had to assume the truth of the allegations asserted.  Id.  The Court held the plaintiff failed to plead sufficient facts to prove that fraudulent concealment tolled the statute of limitations; however, it granted the plaintiff leave to

11

amend his complaint to plead additional facts in support of his argument.  Id. at 4.  Odom just completely misinterprets the case.

Furthermore, even if Odom was to allege prejudice from this failure to perform a background check, his claim would fail.  The events of Gaddy did not come to light until June of 2014, which was after Plaintiff's case was decided in July of 2012.  Thus, even if a background check was performed, this alleged incident would not have been discovered.  Officer Chichearo was also not a witness for the Government at the suppression hearing or trial.  (Gov't's Mot. to Dismiss Petition at 11.)  Officer Clerkin was the officer who saw and recovered Odom's gun and testified at the suppression hearing and trial.  (Id.)  Thus, any evidence discovered in a background check to impeach Officer Chichearo's credibility would not have made any impact on the outcome of Odom's trial.  Accordingly, Odom has failed to meet his burden by proving that there is a reasonable probability that the result of the proceeding would have been different if his counsel performed a background check on Officer Chichearo.  Strickland, 466 U.S. at 694.

**B.  Counsel was Ineffective for Not Investigating Eyewitnesses Boone and Marshall and Failing to Call an Exculpatory Witness.**

Odom contends that his attorney was ineffective because he failed to investigate the two Government eyewitnesses, and failed to call any exculpatory witnesses to his defense.  (§2255 Mot. at 5a.)  Odom attacks Marshall's credibility as a witness asserting that he has a felony conviction.  (Id.)  These arguments are not compelling.

Marshall did not even testify at Odom's trial as the Government was unable to locate him and serve him with a trial subpoena.  (Gov't's Mot. to Dismiss Petition at 4.)  Odom does not dispute the fact that the Government disclosed Marshall's criminal history to the defense in discovery, so any additional investigation would have been fruitless.  (Id. at 12.)  The defense

12

even raised Marshall's prior conviction at trial.  (Tr. 7/24/12, p. 107:1-12.)  Although the Government's objection to this point was sustained, it illustrates that defense counsel was aware of Marshall's criminal history, and any further investigation would not have provided Odom with additional information or changed the fact that Marshall did not even testify at trial.

Regarding Boone, Odom claims that his counsel failed to investigate her but does not allege what the investigation would have uncovered.  (§2255 Mot. at 5a.)  Furthermore, Odom does not contest the fact that the Government met its discovery obligations with respect to Boone.  Essentially, Odom has failed to show how he was prejudiced by a lack of investigation of Boone.  We agree with the Government's position that any investigation into Boone's background would not have undermined Boone's credibility more than she did to herself. (Gov't's Mot. to Dismiss Petition at 13.)  Boone asserted complete memory loss regarding the events of April 9, 2011, including her visit to R&R Auto Repair, her statement to police that day, and her subsequent grand jury testimony.  (Tr. 7/24/12, pp. 66-74; 90-96.)  Boone's credibility was undoubtedly questioned by the jury, and Odom fails to allege how any additional investigation into Boone would have had a reasonable probability of changing the outcome of the case.

Odom next claims that his counsel failed to "call any exculpatory witnesses" for his defense.  (§2255 Mot. at 5a.)  Odom fails to identify a specific exculpatory witness or even allude to what they would say.  This is a "vague and conclusory allegation" that can typically be disposed of without further investigation.  See Thomas, 221 F.3d at 437.  Although Odom did not identify a specific exculpatory witness, we will give him the benefit of the doubt and assume that he is referring to Carboni as the Government proposed.   The Government went through

great lengths to subpoena Carboni to testify but was unable to locate him.  (Gov't's Mot. to Dismiss Petition at 13.)  Odom is well aware of these attempts as trial was postponed for a month in an attempt to locate Carboni.  (Doc. Nos. 37, 39.)  Even when the Government utilized their own investigatory tools and Carboni's contact information provided by defense counsel, they were still unable to locate him. (Gov't's Mot. to Dismiss Petition at 13-14.)   Furthermore, prejudice under Strickland cannot be based on mere speculation about what a witness might have said.  See United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989) (holding that a showing for prejudice under Strickland "may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said"); Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001).  Ultimately, Odom fails to prove how calling "any exculpatory witness" would have had a reasonable probability of changing the outcome of the case.

### C. Counsel was Ineffective for Neither Obtaining a Fingerprint Check on the Gun, Nor Finding Out the Registered Owner of the Gun.

Odom contends that his attorney was ineffective because he failed to perform a second fingerprint analysis of the gun to determine if the prints matched Officer Chichearo, and failed to find the registered owner of the gun.  (§2255 Mot. at 5-5a.)  These arguments are also unavailing.

Regarding the registration issue, the Government did conduct a gun ownership trace, which showed the gun had been purchased in Texas in 1994 but had not been reported stolen. (Gov't's Mot. to Dismiss Petition at 3.)  The Government produced this information in discovery with the name of the 1994 purchaser redacted.  (Id. at 15.)  Odom does not allege that the results would have been different had his attorney conducted a search.  When the Third Circuit reviewed Odom's case, they reiterated that Odom only had to constructively possess the gun to be found

14

guilty.  See Odom, 627 F. App'x at 154.  The Court held that "in order to prove constructive possession, the Government must have proven beyond a reasonable doubt that (1) Odom knew of the gun's existence, (2) Odom had the power to exercise dominion and control over the gun, and (3) Odom intended to exercise dominion and control over the gun."  Id.  Thus, who the registered owner of the gun was irrelevant, and the fact that it was registered to someone else was not an issue at trial.  The Court held there was sufficient proof presented at trial that Odom constructively possessed the gun.  Id. at 154-55.  Therefore, Odom was not prejudiced at trial by his attorney failing to find the registered owner of the gun since the registered owner of the gun was already known, and it was also irrelevant to the crime for which Odom was charged, which required only a showing of constructive possession of the firearm.

Regarding the fingerprint analysis, the Government conducted a latent fingerprint analysis of Odom's gun, but no identifiable fingerprints were recovered.  (Gov't's Mot. to Dismiss Petition at 3.)  Odom suggests that his attorney failed to get a fingerprint check, and, more specifically, his attorney failed to check the gun for Officer Clerkin and Officer Chichearo's fingerprints.  (§2255 Mot. at 5.)  Odom does not allege why a second fingerprint check would have resulted in different conclusions than the Government's analysis.  There was sufficient evidence presented at trial that Odom exerted control over the firearm and was in constructive possession of it.  See Odom, 627 F. App'x at 154-55.  The decision not to conduct a second fingerprint test was likely a reasonable defense strategy.  Strickland, 466 U.S. at 681 (citation omitted) ("[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those

assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial.").

At trial, the fact that Odom's print was not identified on the gun worked in his favor regarding his defenses against constructive possession.  His counsel could have reasonably determined that it was the better strategic decision not to conduct a second fingerprint analysis of the gun due to the risk of identifying Odom's print on the gun, which would have completely undermined his defense.  Either way, Odom has failed to allege why a second fingerprint analysis would have yielded different results than the Government, who found no identifiable prints on the gun.  No evidence on the record supports any finding that Officer Chichearo or Officer Clerkin planted the gun, which cuts against Odom's argument that his counsel should have checked for their prints.  As noted above, Odom completely mischaracterizes the case to which he claims Officer Chichearo was found to have planted a gun.  See Gaddy, 2015 WL 328235.  Accordingly, Odom has not proven that there was a reasonable probability that the outcome of the case would have been different if his counsel conducted a second fingerprint analysis.

### D.  Counsel was Ineffective for Failing to Subpoena the Limousine Video.

Odom contends that his attorney was ineffective because he failed to subpoena the video of the incident from the limousine that would have shown that Officer Chichearo planted the weapon.  (§2255 Mot. at 5a.)  This is the first time Odom has ever raised the issue of there possibly being video footage of the incident.  Odom has repeatedly stated to us that the federal government had seized his vehicle and refused to return it; a claim that the Government

vehemently denies.[4]  (Gov't's Mot. to Dismiss Petition at 16; Ex. A.)  Odom's counsel was aware of the Government's position on the missing vehicle.  (Id.)

A subpoena of the video would have been baseless as there is nothing in the record to suggest, other than Odom's conclusory allegations, that such a video even exists.  Considering all these facts, Odom cannot show the result of his trial would have been different if his counsel subpoenaed the limousine video because neither the Government nor his counsel could even locate the vehicle.  A subpoena would have done nothing more than waste time and resources. Therefore, Odom's counsel's failure to subpoena the limousine video would have had zero probability of changing the outcome of the case since the video would not have been produced.

### E. Counsel was Ineffective for Failing to File a Motion to Suppress on the Grounds that the Officers Planted the Gun in Odom's Limousine

Odom contends that his attorney was ineffective because he "failed to file a motion to suppress on the grounds that the gun was planted by the officers, which would have been supported by a 'fruit of the poisonous tree' argument."  (§2255 Mot. at 5a.)  This motion would have been devoid of any legal or factual basis.  Odom's counsel did not just sit around idly.  His counsel filed a motion to suppress based on the legal theory that the officers violated Odom's Fourth Amendment rights because they lacked reasonable suspicion to pull his vehicle over. (Doc. No. 17.)  There was a hearing on April 25, 2012, but the motion was ultimately unsuccessful.  (Doc. No. 40.)  Odom's counsel also filed a motion to dismiss the indictment on speedy trial grounds, but, that too, was ultimately unsuccessful.  (Doc. Nos. 27, 30.)

---

[4] The Government investigated the claim of the missing limousine and determined that, after his local arrest, it was released by the Philadelphia Parking Authority on April 30, 2011.  (Gov't's Mot. to Dismiss Petition at 16; Ex. A.) On January 9, 2012, Odom drove his limousine to a Philadelphia Police Station to make an unrelated complaint, but police realized he had an outstanding federal arrest warrant and took him into custody.  (Id.)  When Odom's relative went to pick up the limousine after his arrest, it was missing.  (Id.)  The Government has consistently claimed it does not possess the vehicle, and does not have information about its whereabouts.  (Id.)

Both of these motions had some factual basis that made for reasonable, although ultimately unsuccessful, legal arguments.  Odom suggests that his counsel should have pursued a motion to suppress on the grounds that the gun was planted.  There is simply no factual basis for this argument.  Again, we assume Odom is relying on the case involving Officer Chichearo, which he misinterprets.  See Gaddy, 2015 WL 328235.  There was nothing in the record suggesting that the officers had motive to frame Odom, and the facts of the case weighed heavily against him as explained by the Third Circuit in affirming Odom's verdict.  See Odom, 627 F. App'x at 154-55.  Also, the Third Circuit has held that "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015) (citing United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)).  Odom's argument is not supported by any factual basis; therefore, it is meritless and his counsel cannot be ineffective for failing to file the suppression motion.

### F.  Counsel was Ineffective for Failing to Communicate Sufficiently With Him

Odom's remaining claims for ineffective assistance of counsel focus on his attorney's failure to communicate with him.  Odom contends that his attorney was ineffective because he never showed him the Jencks Material, never discussed possible trial defenses with him, and never verbally communicated with him during the entire course of his case.  (§2255 Mot. at 5-6.) Regarding all these claims, Odom fails to allege any prejudice from these actions which is fatal to his claim.  Strickland, 466 U.S. at 697.

Odom has failed to allege how failing to see the Jencks material would have changed the outcome of the case.  We also find that Odom, even if he attempted, would have failed to allege

18

prejudice in this instance.  The evidence against Odom was significant enough that a showing of the Jencks material to Odom would not have had a reasonable probability of affecting the outcome of the case.  See Strickland, 466 U.S. at 696 (holding "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

Odom also alleges that his counsel did not discuss possible defenses with him.  Like above, there is no prejudice alleged or even possible with this allegation.  Odom does not allege that his counsel should have discussed a specific defense or raised a specific defense.  Again, this is a "vague and conclusory allegation" that can typically be disposed of without further investigation.  See Thomas, 221 F.3d at 437.  If Odom was attempting to allude to the fact that his counsel should have raised the defense that the gun was planted by the officers, we have already held that this was a meritless claim.  See supra p. 18; see also Bui, 795 F.3d at 366-67 (holding that there is "no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").  Additionally, discussing the defenses with Odom would not have had a reasonable probability of affecting the outcome considering the weighty evidence presented against him at trial as noted by the Third Circuit in his appeal.  See Odom, 627 F. App'x at 154-55.

Odom also claims his attorney failed to verbally communicate with him during the entire length of his case.  (§2255 Mot. at 6.)  However, we note that his prior attorney attempted to meet and discuss his case with him while he was in prison on March 28, 2012.  (Doc. No. 23.)  It was at this time that Odom became belligerent with his counsel and refused to discuss the case, which resulted in his counsel filing a motion to withdraw that was eventually granted by this

Court.  (Doc. Nos. 23, 24.)  Thus, we need not accept Odom's allegation as true since it is clearly contradicted by the record.  See McCoy, 410 F.3d at 134.  An additional reason why this claims fails is that Odom, again, fails to allege any prejudice.  Odom limits his allegation to verbal communications and fails to indicate that he was not properly informed of trial strategies or case updates through non-verbal communications such as mailings.  Accordingly, Odom has not proven that there was a reasonable probability that the outcome of the case would have been different if his counsel communicated with him in the manner that he sought.

## IV.     EVIDENTIARY HEARING

Here, an evidentiary hearing is not required because it plainly appears that Odom is not entitled to relief on any of the grounds raised.  See Nahodil, 36 F.3d at 326 (holding that an evidentiary hearing is not required when the "motion, files, and records, 'show conclusively that the movant is not entitled to relief'").

## V.      CERTIFICATE OF APPEALABILITY

Local Appellate Rule 22.2 of the Third Circuit states that when a final order denying a motion under § 2255 is entered, the district court must determine whether a certificate of appealability should issue.  See 3d.Cir. L.A.R. 22.2.  A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484–5 (2000) (internal citations and quotations omitted).  Here, Odom is also not entitled to a certificate of appealability because he has not

made a substantial showing of the denial of a constitutional right.  Consequently, we will deny a certificate of appealability because jurists of reason would not debate whether we properly resolved the issues presented.

**VI.**    **CONCLUSION**

Based on the foregoing, we will deny Odom's § 2255 Motion.  In addition, we will not issue a certificate of appealability because Odom has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

An appropriate Order follows.